UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

SCOTT EBNER and NICOLE EBNER,

          Plaintiffs,

v.

STATEBRIDGE COMPANY, LLC and
HILL WALLACK, LLP,

          Defendants.

Civil Action No. 16-8855-BRM-DEA

**OPINION**

---

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants Statebridge Company, LLC ("Statebridge") and Hill Wallack, LLP's ("Hill Wallack") (collectively, "Defendants") Motion to Dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 6.) Plaintiffs Scott Ebner and Nicole Ebner (collectively, "Plaintiffs") oppose the motion. (ECF No. 10.) Pursuant to Federal Rule of Civil Procedure 78(a), the Court heard oral argument on June 5, 2017 (ECF No. 16.). For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED in part** and **DENIED in part**, as follows: (1) Defendants' Motion to Dismiss Plaintiffs' Fair Debt Collection Practices Act ("FDCPA") claim against Hill Wallack as to the November 2015 letter is **GRANTED WITH PREJUDICE**; (2) Defendants' Motion to Dismiss Plaintiffs' FDCPA claim against Hill Wallack as to the October 2016 correspondence is **GRANTED WITH PREJUDICE**; (3) Defendants' Motion to Dismiss Plaintiffs' FDCPA claim against Statebridge as to the November 2015 letter is **GRANTED WITH PREJUDICE**; (4) Defendants' Motion to Dismiss Plaintiffs' unjust enrichment claim against Hill Wallack is **GRANTED WITH PREJUDICE**; and (5) the Motion to Dismiss is **DENIED** in all other respects.

1

## I. BACKGROUND

For the purposes of this Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Further, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted).

On November 23, 2005, OceanFirst Bank ("OceanFirst") lent Plaintiffs $412,500.00 to mortgage their home (the "Loan"). (Compl. (ECF No. 1) ¶ 9 and *see* Ex. A to Certif. of Kristi Fawns (ECF No. 6-2).) In connection with the Loan, Plaintiffs executed and delivered to OceanFirst a promissory note (the "Note") (*see* Ex. A to ECF No. 6-2), which was secured by the mortgage (the "Mortgage") on real property located in the Township of Stafford, Ocean County. (*See* Ex. B to ECF No. 6-2.) "Plaintiff's [sic] payment for principle and interest was between $1,900.00 and $2,400.00 per month." (ECF No. 1 ¶ 9.) OceanFirst assigned the Mortgage, and separately transferred the Note, by written assignment three times and, ultimately, the Note and Mortgage were assigned to Waterfall Victoria Grantor Trust II, Series G ("Waterfall"). (Ex. A to ECF No. 6-2 at 11-13.)

Sometime in 2012, "Plaintiffs encountered financial issues and became unable to make payments on the mortgage loan, and the loan went into default." (ECF No. 1 ¶ 10.) The default resulted in Hill Wallack filing a foreclosure action on behalf of Waterfall entitled *Waterfall Victoria Master Fund, LLC v. Ebner*, et al., No. F-032984-15 (N.J. Super. Ct. Ch. Div. Sept. 30, 2015). (ECF No. 1 ¶ 11 and ECF No. 1-1.) "The Complaint contain[ed] a notice required by the [F]air Debt Collection Practices Act which notified Plaintiffs that Hill Wallack represents the creditor and that they can dispute the debt with Hill Wallack." (ECF No. 1 ¶ 13.)

On October 12, 2015, Statebridge sent Plaintiffs a "Notice of Assignment, Sale and Transfer of Servicing Rights" informing Plaintiffs that:

> In accordance with section 6 of the Real Estate Settlement Procedures Act ("RESPA") (12 U.S.C. Section 2650), we are informing you that effective October 1, 2015, the servicing of your mortgage loan, that is the right to collect payments from you, has been assigned and transferred to Statebridge Company, LLC.

(ECF No. 1-2 at 1 and ECF No. 1 ¶ 15.) The notice further indicated that Statebridge was "a debt collector" and that the notice was "an attempt to collect a debt and any information obtained will be used for that purpose." (ECF No. 1-2 at 2 and *see* ECF No. 1 ¶ 16.) Plaintiffs were able to borrow funds from their pension to reinstate the mortgage, and accordingly requested that Statebridge provide them with reinstatement figures. (ECF No. 1 ¶ 17.)

On November 6, 2015, Hill Wallack on behalf of Statebridge provided Plaintiffs with "an estimate of the figure to reinstate the mortgage," "which required a certified check in the amount of $42,393.80 to Statebridge and a separate certified check in the amount of $1,342.50 to Hill Wallack." (*Id.* and ECF No. 1-3.) The correspondence also stated, "[p]lease contact this office prior to remittance for exact figures and to verify amounts due. Once payments are received, this office will cancel the Sheriff's sale, dismiss the action vacate the Judgment, and discharge this Lis Pendens." (ECF No. 1-3.) It further advised Plaintiffs that Hill Wallack was "attempting to collect a debt, and any information provided to this office will be used for that purpose." (*Id.*) On November 20, 2015, Plaintiffs contacted Hill Wallack to confirm the reinstatement figures. (ECF No. 1 ¶ 19.) On November 23, 2015, Hill Wallack confirmed the reinstatement figures in the November 6 correspondence were accurate. (*Id.*) Thereafter, Plaintiffs sent Statebridge a certified check in the amount of $42,393.80 and sent Hill Wallack a certified check in the amount of $1,342.50. (*Id.* ¶ 22 and ECF No. 1-4.) Hill Wallack confirmed receipt of the funds on December

3

1, and on December 9, 2015, filed a Stipulation of Dismissal for the foreclosure action. (ECF No. 1 ¶¶ 24, 27 and ECF No. 1-5.) Plaintiffs began making regular monthly loan payments after the reinstatement of the mortgage. (ECF No. 1 ¶ 28.)

Sometime in January 2016, Plaintiffs were advised by Statebridge they were in default. (ECF No. 1 ¶ 29.) "Plaintiffs contacted Statebridge to try to resolve the issues but were unable to do so." (*Id.* ¶ 31.) In response, Statebridge provided Plaintiffs with a "Loan History Statement" dated February 3, 2016, which illustrated Statebridge made payments for real estate taxes in October 2015 in the amount of $4,416.48 and that Plaintiffs owed that sum. (*Id.* ¶ 32 and ECF No. 1-6.) These payments were not included in the reinstatement figures sent in November. (ECF No. 1 ¶ 32.) Nonetheless, between February 2016 and September 2016, Plaintiffs attempted to resolve their issues with Statebridge. (*Id.* ¶ 35.) "Statebridge and Hill Wallack were unwilling to return the funds that had been paid by Plaintiffs under false pretenses." (*Id.* ¶ 37.)

On September 19, 2016, Plaintiffs requested updated reinstatement figures. (*Id.* ¶ 41.) On September 28, 2016, Hill Wallack provided Plaintiffs with "an estimate of the figures to reinstate the mortgage" "good through Wednesday, October 26, 2016 only" in the amount of $32,020.00 (ECF No. 1-7 and ECF No. 1 ¶ 42.) Plaintiffs provided these funds to Hill Wallack. (ECF No. ¶ 43.) Nevertheless, Plaintiffs allege that on October 28, 2016, they "received correspondence from Statebridge stating that they were in default and that they owed $6,414.20." (*Id.* ¶ 44.)

On November 30, 2016, Plaintiffs filed a Complaint explicitly alleging four counts. (ECF No. 1.) The first count alleges Defendants violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692f of the FDCPA because: (1) "[t]he reinstatement figures provided in November 2015 [were] a false and misleading representation in an attempt to collect a debt"; (2) "[t]he refusal of [] Defendants to reinstate the loan in December 2015, after accepting the funds was an unconscionable means to

4

collect or attempt to collect the alleged debt"; (3) "[t]he refusal of [] Defendants to return the over $43,000 paid by Plaintiffs based upon the representation that it would be sufficient to reinstate the loan was an unconscionable means to collect or attempt to collect the alleged debt"; (4) "[t]he reinstatement figures provided in September 2015 [were] a false and misleading representation in an attempt to collect a debt"; (5) "[t]he refusal of [] Defendants to reinstate the loan in October 2016, after accepting the funds was an unconscionable means to collect or attempt to collect the alleged debt"; and (6) "[t]he refusal of [] Defendants to return the over $30,000 paid by Plaintiffs based upon the representation that it would be sufficient to reinstate the loan was an unconscionable means to collect or attempt to collect the alleged debt." (*Id.* ¶¶ 51-63.)

The second count alleges general violations of 15 U.S.C. § 1692e, that Defendants used false, deceptive, or misleading representations or means to collect a debt, that the loan would be reinstated if Plaintiffs paid the said amounts, and that Defendants should not have accepted the payments or refused to return the funds if the funds did not reinstate the loan. (*Id.* ¶¶ 64-72.) Count three alleges Statebridge was unjustly enriched "by accepting the required payments to reinstate the loan, but refusing or failing to reinstate the loan." (*Id.* ¶ 74.) Lastly, count four alleges Hill Wallack was unjustly enriched "because Plaintiffs submitted funds payable directly to Hill Wallack to cover Statebridge's counsel fees based on the representation that such payment would reinstate the loan." (*Id.* ¶ 81.)

In lieu of filing an answer, Defendants filed a Motion to Dismiss. (ECF No. 6.) Plaintiffs filed an opposition on February 7, 2017. (ECF No. 10.) The Court heard oral argument on June 5, 2017. (ECF No. 16.)

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the defendant-harmed-me accusation'" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common

sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir.1999). Specifically, courts may consider any "'document *integral to or explicitly relied upon* in the complaint . . . ." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426 (emphasis in original).

### III. DECISION

#### A. FDCPA Claims

Congress enacted the FDCPA as a result of the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices" and the inadequacy of existing laws and procedures designed to protect consumers. 15 U.S.C. § 1692(b). The stated purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors" and to promote further action to protect consumers against debt collection abuses. *Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 174 (3d Cir. 2015) (quoting 15 U.S.C. § 1692(e)). "The right congress sought to protect in enacting this legislation was therefore not merely procedural, but substantive and of great importance." *Blaha v. First Nat'l Collection Bureau*, Civ. No. 16-cv-2791, 2016 U.S. Dist. LEXIS 157575, at *23 (D.N.J. Nov. 10, 2016).

Typically, "[t]o prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves

an attempt to collect a 'debt' as the [FDCPA] defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014); *see also Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015). In the Motion to Dismiss, Defendants do not dispute Plaintiffs are "consumers" under the meaning of the FDCPA or that Defendants' challenged practice involves an attempt to collect a debt as defined by the FDCPA. Instead, Defendants argue they have not violated a provision of the FDCPA in attempting to collect the debt and that Statebridge is not a debt collector. Therefore, this opinion will only address those issues.

Pursuant to 15 U.S.C. §§ 1692e:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> . . . .
>
> (2) The false representation of--
>     (A) the character, amount, or legal status of any debt; or
>     (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
> . . . .
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> . . . .
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

*See Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 367 (3d Cir. 2011). Because the FDCPA is a remedial statute, courts "construe its language broadly, so as to effect its purpose." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006).

In considering claims under the FDCPA, the Third Circuit has held "that certain communications from lenders to debtors should be analyzed from the perspective of the 'least sophisticated debtor.'" *Id.* (citing *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000) (applying the perspective of the least sophisticated debtor to 15 U.S.C. § 1692g) (citation omitted); *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991) ("Statutory notice under the Act is to be interpreted from the perspective of the 'least sophisticated debtor.'")); *see Rosenau v. Unifund Corp.*, 539 F.3d 218, 223 (3d Cir. 2008) (applying the "least sophisticated debtor" standard to a claim under 15 U.S.C. § 1692e(3)). "The least sophisticated debtor standard requires more than 'simply examining whether particular language would deceive or mislead a reasonable debtor' because a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor." *Brown*, 464 F.3d at 454 (quoting *Wilson*, 225 F.3d at 354). This lower standard comports with the mandate of the FDCPA, which is to protect "all consumers, the gullible as well as the shrewd, the trusting as well as the suspicious from abusive debt collection practices." *Id.* (citations omitted). However, the standard does not provide for "bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Id.* (quoting *Wilson*, 225 F.3d at 354–55).[1]

---

[1] For the first time at oral argument, Defendants argued the least sophisticated debtor standard does not apply to this case because all correspondences were sent to Plaintiffs' attorney and not the Plaintiffs directly, and instead the "reasonable competent attorney standard" applies. A "newly minted argument raised for the first time during oral argument" is "problematic." *Millipore Corp. v. W.L. Gore & Associates, Inc.,* Civ. 11–1453(ES), 2011 WL 5513193, at *9 (D.N.J. Nov. 9,

### i. FDCPA Claims Against Hill Wallack

First, Defendants argue the "November 2015 Letter cannot form the basis for any FDCPA" claim because any claims based on that letter are time barred, or in the alternative, the letter is not deceptive or fraudulent, "does not contain any unauthorized charges or any incorrect charges which could be found to be actionable under 15 U.S.C. §§ 1692e(2) or 1692f," and the letter "does not contain any threats to take any action that could not be legally taken or not intended to be taken relating to the amounts due in order for the Plaintiffs to substantiate a claim under 15 U.S.C. § 1692e(5)." (ECF No. 6-1 at 8-10.) In their brief and at oral argument, Plaintiffs concede any claims as to the November 2015 Letter are time barred. (*See* ECF No. 10 at 5 ("The Plaintiffs do not oppose dismissal of the FDCPA complaint against either Defendant to the extent of any time barred allegations. . . . However[,] [] Plaintiffs' claim against both parties for any other FDCPA violations . . . have been sufficiently pled and should be allowed to proceed.").) Nonetheless, Plaintiffs argue they have sufficiently pled a FDCPA violation for the February 2016 Loan History Statement, which is related to the November 2015 correspondence; the September 2016 reinstatement letter; and the October 2016 correspondence. (*Id.* at 6-11.)

Because Plaintiffs concede any claims as to the November 2015 Letter are time barred, Defendants' Motion to Dismiss all claims against Hill Wallack regarding the November 2015 letter is **GRANTED WITH PREJUDICE**.

---

2011). "[A]rguments raised for the first time at oral argument will be disregarded." *Id.* Not only was this argument raised for the first time during oral argument, but the Complaint implies that the correspondences were sent directly to Plaintiffs. Because the Court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]," it applies the least sophisticated standard at this time. *Phillips*, 515 F.3d at 233 (emphasis added).

Defendants also argue there is no FDCPA violation based upon the issuance of the September 2016 Letter. (ECF No. 6-1 at 10.) Specifically, they argue "the amounts set forth in the September 2016 Letter were authorized charges under the Loan Documents." (*Id.*) Defendants further contend:

> The September 2016 Letter set forth the principal, interest, late charges, and inspection payments necessary to bring the subject loan current – which loan was past due because of the Plaintiffs' failure to make the necessary monthly payments in full and not because the Plaintiffs' failed to make the necessary payment to reinstate the subject loan and have the Foreclosure Action dismissed. The inspection fees are authorized under Sections 7, 9, and 14 of the Mortgage. Once the Plaintiffs made the payment identified in the September 2016 Letter, the subject loan was brought current as indicated in the October 2016 Loan Statement.

(*Id.* at 11 (citations omitted).) Plaintiffs respond by stating that not only is the September 2016 reinstatement letter deceptive or misleading, but the February 2016 Loan History Statement and October 2016 correspondence stating they were in default are deceptive. (ECF No. 10 at 7-11.)[2]

The Court finds Plaintiffs sufficiently pled that either the September 2016 or October 2016 letter is deceptive or misleading to the least sophisticated debtor. Upon reading the September 28, 2016 letter indicating Plaintiffs need only pay $32,020.000 "to reinstate the mortgage" "good through Wednesday, October 26, 2016 only," (ECF No. 1-7 and ECF No. 1 ¶ 42), and paying said funds (ECF No. ¶ 43), the least sophisticated debtor could get the impression that the loan was

---

[2] In the Complaint or their brief, Plaintiffs do not articulate if the October 2016 and February Loan History Statement correspondence was sent by Hill Wallack or Statebridge. However, at oral argument Plaintiff conceded the October 2016 letter was sent directly from Statebridge. Plaintiffs did not concede the February Loan History Statement was sent directly by Statebridge. Because the Court is required to "accept all factual allegations as true, *construe the complaint in the light most favorable to the plaintiff*, and determine whether, *under any reasonable reading of the complaint, the plaintiff may be entitled to relief*," it will assume for the purposes of this Motion that the February Loan History Statement was sent by Hill Wallack on behalf of Statebridge and analyze the FDCPA claim as to both Hill Wallack and Statebridge. *Phillips*, 515 F.3d at 233 (emphasis added).

11

brought current through October 26, 2016. The October 28, 2016 correspondence received two days after the date the loan was "current," claiming Plaintiffs "were in *default* and that they owed $6,414,20," creates ambiguity. (ECF No. 1 ¶ 44 (emphasis added).) Therefore, Plaintiffs have sufficiently pled that either the September 2016 letter was misleading or deceptive and did not bring Plaintiffs loan current or the October 28, 2016 letter is deceptive and misleading. It is hard to imagine the debtor was already in "default" two days after the loan was current. Further, the least sophisticated debtor would assume it could take a failed monthly payment for them to accrue debt, not two days.[3]

Defendants argument that Plaintiffs' "statement is inaccurate, as the document does not contain the term 'default' or advise the Plaintiffs that their loan has been defaulted or is no longer in good standing" is without merit. (Def.'s Reply Br. (ECF No. 11) at 5-6.) The Court must "accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. While the Court may consider "'document[s] *integral to or explicitly relied upon* in the complaint," *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426, the document attached by Defendants as a representation of the October 28, 2016 correspondence Plaintiffs reference in their Complaint, is not dated October 28, 2016, and the Court will not infer it is the same document. (*See* Ex. F to ECF No. 6-2.) The Court also finds Defendants' argument that "[t]here is no 'stand alone' claim relating to [the October 2016] communication asserted in the Complaint" unpersuasive. Because the Court is required to "accept all factual allegations as true, *construe the complaint in the light most favorable to the plaintiff*, and determine whether, *under any reasonable reading of the complaint, the plaintiff*

---

[3] Although the November 2015 letter is time barred, it is reasonable that the least sophisticated debtor would assume the loan was current once the mortgage was reinstated.

*may be entitled to relief,*" it finds Plaintiffs' Complaint has sufficiently pled facts to state a claim for relief as to the October 28, 2016 and September 2016 correspondence. *Phillips*, 515 F.3d at 233 (emphasis added). However, because Plaintiffs conceded, at oral argument, that the October 2016 correspondence was not sent or drafted by Hill Wallack, Defendants Motion to Dismiss Plaintiffs' claims against Hill Wallack as to the October 2016 is **GRANTED**. Nevertheless, Defendants' Motion to Dismiss Plaintiffs' claims against Hill Wallack as to the September 2016 correspondence is **DENIED**.

For similar reasons, the Court also denies Defendants' Motion to Dismiss Plaintiffs' FDCPA claim as to the February 3, 2016 Loan History Statement.[4] Although Plaintiffs' November 2015 claim is dismissed as time-barred, Plaintiffs have sufficiently pled facts to state a claim for relief as to the February Loan History Statement. On November 6, 2015, Hill Wallack on behalf of Statebridge provided Plaintiffs with "an estimate of the figure to reinstate the mortgage," "which required a certified check in the amount of $42,393.80 to Statebridge and a separate certified check in the amount of $1,342.50 to Hill Wallack." (ECF No. 1 ¶ 17 and ECF No. 1-3.) Plaintiffs complied and paid the stated amounts. (ECF No. 1 ¶ 22 and ECF No. 1-4.) Nonetheless, in January 2016, Statebridge advised Plaintiffs they were in default. (ECF No. 1 ¶ 29.) Therefore, "Plaintiffs contacted Statebridge to try to resolve the issues but were unable to do so." (*Id.* ¶ 31.) In response, Statebridge provided Plaintiffs with a "Loan History Statement" dated February 3, 2016, which illustrated Statebridge made payments for real estate taxes in October 2015 in the amount of

---

[4] At oral argument, Defendants argued the Loan History Statement was sent directly from Statebridge and not Hill Wallack. Plaintiffs did not concede. Because Plaintiffs did not concede the Court is required to "accept all factual allegations as true, *construe the complaint in the light most favorable to the plaintiff*, and determine whether, *under any reasonable reading of the complaint, the plaintiff may be entitled to relief,*" it will assume for the purposes of this Motion that it was sent by Hill Wallack on behalf of Statebridge and analyze the FDCPA claim as to both Hill Wallack and Statebridge. *Phillips*, 515 F.3d at 233 (emphasis added).

$4,416.48 and that Plaintiffs owed that sum. (*Id.* ¶ 32 and ECF No. 1-6.) The October payments were not included in the reinstatement figures sent in November. (ECF No. 1 ¶ 32.) Accordingly, Plaintiffs have sufficiently pled that either the November 2015 or the February Loan History Statement was deceptive or misleading and/or the amount of debt was falsely represented.

Viewing all facts in the light most favorable to Plaintiffs, the February Loan History statement could be a deceptive practice to get Plaintiffs to pay more than was required of them at the time in anticipation of future defaults, since Plaintiffs allegedly paid everything that was due and owing in October 2015. At this time, it is unclear which correspondence was deceptive, if any: the November 2015 correspondence, which is dismissed as time-barred, or the February Loan History Statement. Accordingly, Defendants Motion to Dismiss Plaintiffs' claims against Hill Wallack as to the February Loan History Statement is **DENIED.**

### ii. FDCPA Claims Against Statebridge

Defendants argue the "Plaintiffs' FDCPA claims against Statebridge are similarly barred by the applicable statute of limitations as stated [] above relating to Hill Wallack." (ECF No. 6-1 at 14.) Again, Plaintiffs concede any claims as to the November 2015 Letter are time barred. (*See* ECF No. 10 at 5 ("The Plaintiffs do not oppose dismissal of the FDCPA complaint against either Defendant to the extent of any time barred allegations. . . . However[,] [] Plaintiffs' claim against both parties for any other FDCPA violations . . . have been sufficiently pled and should be allowed to proceed.").) Because Plaintiffs concede any claims as to the November 2015 Letter are time barred, Defendants Motion to Dismiss claims against Statebridge regarding the November 2015 letter is **GRANTED WITH PREJUDICE.**

Defendants also argue there is no FDCPA violation based upon the issuance of the September 2016 Letter. (ECF No. 6-1 at 15.) In addition to the reason articulated above in Section

III(A)(i), they argue "that upon receipt of the 2015 Payment, Plaintiffs' Loan was reinstated, the Foreclosure Action was dismissed and, as a result, at that point Statebridge was no longer a 'debt collector' under the FDCPA notwithstanding whether its document may have stated otherwise." (*Id.* at 15-16.) Furthermore, "[a]nother additional reason why the FDCPA claims relating to the September 2016 Letter fails is because the Cure Payment brought Plaintiffs' Loan current as expected." (*Id.* at 16.)

The FDCPA defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6). "Creditors—as opposed to 'debt collectors'—generally are not subject to the FDCPA." *Id.* A "creditor" is "any person who offers or extends credit creating a debt or to whom a debt is owed," but "does not include any person . . . that . . . receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4). Accordingly, the definition "excludes creditors who attempt to collect their own debts, but does not exclude an entity . . . who has acquired a debt that was already in default." *Oppong v. First Union Mortg. Corp.*, 215 Fed. App'x 114, 118 (3rd Cir. 2007); *see Staub v. Harris*, 626 F.2d 275, 277 (3rd Cir. 1980) (citations omitted) (noting the FDCPA "does not apply to persons or businesses collecting debts on their own behalf. It is directed to those person who are engaged in business for the principal purpose of collecting debts").

15

Courts have also indicated "that an assignee of an obligation is not a 'debt collector' if the obligation is not in default at the time of the assignment; conversely, an assignee may be deemed a 'debt collector' if the obligation is already in default when it is assigned." *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000); *see Bailey 404 v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 387–88 (7th Cir. 1998); *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 958–59 (7th Cir. 1997); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106–07 (6th Cir. 1996). Here, there is no dispute that the various claims assigned to Statebridge were in default prior to their assignment to Statebridge. Indeed, Defendants concede the loan was default prior to their assignment to Statebridge. (ECF No. 6-1 at 15 (admitting the loan was in default but was later reinstated).) The fact that the "Loan was reinstated" is irrelevant for the purposes of this analysis. Therefore, the Court concludes Statebridge is a "debt collector."

Because the Court finds Statebridge is a "debt collector," the Court denies Defendants' Motion to Dismiss Plaintiff's FDCPA claims against Statebridge as to the September 2016, October 2016, and February 2016 correspondences for the reasons stated above in Section III(A)(i). Accordingly, Defendants' Motion to Dismiss all claims against Statebridge is **DENIED** as to the September 2016, October 2016, and February Loan History Statement.

### B. Unjust Enrichment Claims

"Unjust enrichment is not an independent theory of liability, but is the basis for a claim of quasi-contractual liability. The duty which forms the foundation of a quasi-contractual obligation rests on the equitable principle that a person shall not be allowed to enrich himself at the expense of another." *Nat'l Amusements, Inc. v. N.J. Tpk. Auth.*, 261 N.J. Super. 468, 478 (Law. Div. 1992), *aff'd*, 275 N.J. Super. 134 (App. Div. 1994). To establish a claim for unjust enrichment under New Jersey law, "a plaintiff must show both that defendant received a benefit and that retention of that

benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994). Restitution for unjust enrichment is an equitable remedy, available only when there is no adequate remedy at law. *Nat'l Amusements, Inc.*, 261 N.J. Super. at 478; *Am. Rubber & Metal Hose Co. v. Strahman Valves, Inc.*, Civ. A. No. 11-1279 MLC, 2011 WL 3022243, at *8 (D.N.J. July 22, 2011) (citing *Caputo v. Nice–Pak Prods.*, 300 N.J. Super. 498, 507 (App. Div. 1997)) ("Recovery for unjust enrichment, however, is an equitable remedy that is only available when there is no express contract providing for remuneration.").

### i. Unjust Enrichment Claim Against Hill Wallack

Defendant argues Plaintiffs' unjust enrichment claim as to Hill Wallack is without merit because "there was no relationship between the plaintiffs and Hill Wallack upon which they could have provided anything of worth to Hill Wallack with the expectation of payment." (ECF No. 6-1 at 11). Defendants further argue:

> the relationship between Statebridge and Plaintiffs arises out of a contractual agreement between Waterfall, for whom Statebridge acts as its loan servicer, and Plaintiffs. The existence of this contractual relationship, along with the explicit authorization of an award of attorneys' fees and cost in foreclosure actions under New Jersey law, provide additional, separate, grounds which establish the lack of any basis Plaintiffs' unjust enrichment claim against Hill Wallack.

(*Id.*) In their brief and at oral argument, Plaintiffs voluntarily agreed to dismiss the unjust enrichment claim against Hill Wallack. (ECF No. 10 at 5.) Accordingly, Defendant's Motion to Dismiss the unjust enrichment claim against Hill Wallack is **GRANTED WITH PREJUDICE**.

### ii. Unjust Enrichment Claim Against Statebridge

Defendants argue "the Plaintiffs did not confer any benefit on Statebridge for which they expected any payment in return." (ECF No. 6-1 at 17.) Plaintiffs state "Plaintiffs have no express contractual relationship with Statebridge. Therefore[,] their relationship should be characterized as a quasi-contractual relationship." (ECF No. 10 at 11.) Plaintiffs further contend:

> Statebridge, through remission of payment by Hill Wallack, accepted reinstatement payments in November 2015 in excess of $43,000.00 and a second reinstatement payment in September 28th, 2016 [sic] in excess of $30,000.00. While [] Defendants admitted the dismissed 2015 foreclosure complaint, the September 28th, 2016 [sic] reinstatement letter contains $34,954.29 in fees which [] Plaintiffs openly question given Exhibit F attached to [] Defendants' Memorandum. . . . [T]he October 19th, 2016 [sic] billing statement, was not attached to Plaintiffs' Complaint but at the time of the filing of the Complaint it was in their possession. A thorough review of the billing statement shows that the funds tendered as of September 28th, 2016 [sic] were applied by Defendant Statebridge on October 13th, 2016 [sic]. However this statement also supports [] Plaintiffs' contentions of unjust enrichment because the statement itself clearly indicates an overdue payment of $2,434.79 despite the fact [] Plaintiffs had remitted a total of $41,845.14 through October 1[st], 2016 [sic]. [] Plaintiffs allege that the September 28[], 2016 payment was to reinstate the loan. []Defendants in their Memorandum do not dispute this fact and nothing in Exhibit F nor the Affidavit of Kristin Fawns disputes this fact. If [] Plaintiffs' loan was not current with the September 28th, 2016 [sic] payments, then Defendant Statebridge enjoyed the benefit of these funds under the false pretense that loan was reinstated.

(*Id.* at 11-12 (citations omitted).)

At this time, the Court finds Plaintiffs have pled sufficient facts to state a claim for unjust enrichment. *Ashcroft*, 556 U.S. at 678. As demonstrated above, Plaintiffs have pled Statebridge received a benefit either through Plaintiffs over payment or Plaintiffs' reinstatement of the loan and such benefit without restitution would be unjust. *VRG Corp.*, 135 N.J. at 554. Furthermore, while "[r]ecovery for unjust enrichment . . . is an equitable remedy that is only available when

there is no express contract providing for remuneration," *Am. Rubber & Metal Hose Co.*, 2011 WL 3022243, at *8, there is technically no express contract between Plaintiffs and Statebridge. Statebridge has failed to demonstrate *Caputo* would also apply to assignees or loan servicers. Accordingly, Defendants' Motion to Dismiss is **DENIED** as to this claim.

### IV.  CONCLUSION

For the reasons set forth above, Defendants' Motion to dismiss is **GRANTED in part** and **DENIED in part**, as follows: (1) Defendants' Motion to Dismiss Plaintiffs' FDCPA claim against Hill Wallack as to the November 2015 letter is **GRANTED WITH PREJUDICE**; (2) Defendants' Motion to Dismiss Plaintiffs' FDCPA claim against Hill Wallack as to the October 2016 correspondence is **GRANTED WITH PREJUDICE**; (3) Defendants' Motion to Dismiss Plaintiffs' FDCPA claim against Statebridge as to the November 2015 letter is **GRANTED WITH PREJUDICE**; (4) Defendants' Motion to Dismiss Plaintiffs' unjust enrichment claim against Hill Wallack is **GRANTED WITH PREJUDICE**; and (5) the Motion to Dismiss is **DENIED** in all other respects.

Date: June 9, 2017  */s/ Brian R. Martinotti*
 **HON. BRIAN R. MARTINOTTI**
 **UNITED STATES DISTRICT JUDGE**